Senator Harrison A. **WILLIAMS, Jr., et al., Plaintiffs,**

v.

Howard J. **PHILLIPS, Acting Director, Office of Economic Opportunity, Defendant.**

Civ. A. No. 490–73.

United States District Court, District of Columbia.

June 11, 1973.

Alan B. Morrison, Washington, D. C., for plaintiffs.

Harold H. Titus, Jr., U. S. Atty., Robert S. Rankin, Jr., Asst. U. S. Atty., Washington, D. C., Harlington Wood, Jr., Asst. Atty. Gen., Harland F. Leathers, John M. Kelson, Dennis G. Linder, Attys., Dept. of Justice, Washington, D. C., for defendant.

## OPINION

WILLIAM B. JONES, District Judge.

This action is brought by four United States Senators to remove the defendant, Howard J. Phillips, from his position as Acting Director of the Office of Economic Opportunity [OEO] because he has not been appointed by the President, and confirmed by the Senate, as Director of OEO, as is required by 42 U.S.C. § 2941(a) (1970). The plaintiffs, Senators Harrison A. Williams, Jr., Claiborne Pell, Walter F. Mondale, and William D. Hathaway are all members of the Senate Labor and Public Welfare Committee, with Senator Williams serving as Chairman of that Committee, which has legislative jurisdiction over OEO. Jurisdiction is based on the federal question statute, 28 U.S.C. § 1331(a) (1970). The case is now before the Court on the plaintiffs' motion for summary judgment [1] and the defendant's

---

1. This case was filed on March 14, 1973, eight days prior to the scheduled hearing on the cross-motions for summary judgment in Local 2677, A.F.G.E. v. Phillips, 358 F.Supp. 60, (D.D.C.1973), in which actions taken by the defendant Phillips to terminate certain OEO functions were enjoined as unlawful. Because the issue of the validity of Phillips' service in office was raised in that case, the plaintiffs in this case sought leave to file their

motion for summary judgment so that it could be consolidated for hearing at the same time. Fed.R.Civ.P. 56(a) precludes the filing of a motion for summary judgment by the plaintiff until 20 days have elapsed from the time the complaint is filed unless the defendant files a motion for summary judgment within that time, and the plaintiffs' motion was not permitted to be filed. Their points and authorities were allowed to be filed as an

motion to dismiss for failure to meet the jurisdictional amount of $10,000, for lack of standing, and for failure to state a claim upon which relief may be granted. For the reasons set forth below, the Court finds no merit to the jurisdictional defenses of the defendant, and holds that the defendant is not serving validly in office and enjoins him from taking any action as Acting Director of OEO.

The defendant urges that the plaintiffs have failed to show that their complaint meets the jurisdictional amount of $10,000 required by 28 U.S.C. § 1331(a) (1970). In support of this argument the defendant contends that the injury alleged by the plaintiffs in their complaint, the denial of their opportunity to consider the defendant's qualifications for the position of Director of OEO (Complaint ¶ 10), is not measurable in dollars and cents and thus cannot meet the jurisdictional amount. McGaw v. Farrow, 472 F.2d 952 (4th Cir. 1973); Goldsmith v. Sutherland, 426 F.2d 1395 (6th Cir.), cert. denied, 400 U.S. 960, 91 S.Ct. 353, 27 L.Ed.2d 270 (1970). The plaintiffs, however, do not disagree with the $10,000 requirement, but assert they have met the test.

■■ In cases in which purely injunctive relief is sought, the amount in controversy may be measured either by the value of the relief sought by the plaintiff or the cost of enforcing that right to the defendant. Tatum v. Laird, 144 U.S.App.D.C. 72, 444 F.2d 947 (1971), rev'd on other grounds, 408 U.S. 1, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972) (dictum); Hedberg v. State Farm Mutual Automobile Insurance Co., 350 F.2d 924 (8th Cir. 1965) (dictum). Although the Supreme Court has not spoken definitively on the issue, Flast v. Cohen, 392 U.S. 83, 103, 88 S.Ct. 1942, 1954, 20 L.Ed.2d 947 (1968), in discussing standing, noted that "the challenged program involves a substantial expenditure of federal tax funds," without reference to the value of the plaintiff's claim. In this case, the plaintiffs challenge the legal right of the defendant to administer a program with an appropriation of over 790 million dollars for fiscal 1973. Pub.L.No. 92–607, ch. 4, 86 Stat. 1503. Under these circumstances, the plaintiffs are found to have met the $10,000 requirement.[2]

The plaintiffs have brought this action in their capacity as United States Senators who are entitled to pass upon the qualifications of the Director of OEO in the confirmation process, both as members of the Labor and Public Welfare Committee and as members of the Senate as a whole (Complaint ¶ 10). The defendant challenges the standing of the plaintiffs to bring the action in that context because their interest as legislators in the subject mat-

amicus brief at the time of the oral hearing in *Local 2677, supra.* No decision on the legality of the defendant Phillips' service in office was rendered in *Local 2677,* and the motion for summary judgment was filed in this case on April 12, 1973, one day after the decision in *Local 2677.*

2. The plaintiffs may be found to have met the requirement in several other ways. From the time of filing suit until the end of the current fiscal year, the defendant would collect over $10,000 in salary, which he would not be entitled to if he were serving unlawfully in office.

Cases seeking injunctive relief in the first amendment area have also liberally construed the jurisdictional amount requirement. *E. g.,* Spock v. David, 469 F.2d 1047 (3d Cir. 1972). The plaintiffs here are arguably protecting a first amendment right to comment on the nomination of an OEO Director, as well as their right to pass on nominations of executive officers under Art. II, § 2 of the Constitution.

Finally, in valuing the rights of the plaintiffs, the words of Chief Judge Lumbard in Bivens v. Six Unknown Named Agents, 409 F.2d 718, 723 (2d Cir. 1969), rev'd on other grounds, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) are relevant:

Few more unseemly sights for a democratic country operating under a system of limited governmental power can be imagined than the specter of its courts standing powerless to prevent a clear transgression by the government of a constitutional right of a person with standing to assert it.

ter of the controversy allegedly is not an injury in fact within the terms of Sierra Club v. Morton, 405 U.S. 727, 734–735, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972). The Court holds that the plaintiffs have the requisite standing.

██ Six days after this suit was filed the Court of Appeals for the District of Columbia decided Mitchell v. Laird, 476 F.2d 533 (1973). In affirming the dismissal by the District Court of a suit brought by 13 members of the House of Representatives to enjoin the war in Indo-China, the Court of Appeals decided that the plaintiffs did have standing to assert that claim. The Court held that assuming that the war was illegal, that declaration would bear upon the duties of the plaintiffs as members of the House to impeach the defendants as well as their duties to consider and act on appropriations bills, or other legislative matters, such as raising an army, or the enactment of other civil or criminal legislation. In this case, a declaration that the defendant is unlawfully serving in office would bear upon the plaintiffs' duties to consider appropriations for OEO, or other legislative matters affecting OEO or the position of OEO Director. Moreover, the service by the defendant as Acting Director of OEO, rather than Director, does not remove the direct injury to the plaintiffs' alleged right to pass on the individual nominated to be Director. The injury is aggravated, if anything, because the Acting Director is performing the duties of the Director without the advice and consent which the plaintiffs would have been able to assert over an individual whose name had been submitted to the Senate for confirmation. Having rejected these jurisdictional defenses, the Court now turns to the merits of the case.

The Economic Opportunity Act of 1964, the substantive legislation creating OEO, requires that OEO "shall be headed by a Director who shall be appointed by the President, by and with the advice and consent of the Senate." 42 U.S.C. § 2941(a) (1970). In addition, the Deputy Director and five Assistant Directors are all to be appointed by the President with Senate confirmation. Id.

It is undisputed that the defendant Phillips was appointed Acting Director of OEO on January 31, 1973, by the President.[3] On that same date, Phillip V. Sanchez, then OEO Director, in anticipation of the acceptance of his resignation, signed a delegation of his powers to the defendant pending the appointment of Sanchez's successor.[4] Phillips had been serving as an OEO Associate Director for Program Review, a post not subject to Senate confirmation. The defendant's name has not been submitted to the Senate for its advice and consent on an appointment as Director of OEO.[5] No provision is made anywhere in the Economic Opportunity Act of 1964, as amended, for the appointment of an Acting Director. From these undisputed facts it is urged that the defendant is illegally serving in office.

Article II, section 2, of the United States Constitution, provides that the President

shall nominate, and by and with the Advice and Consent of the Senate, shall appoint . . . all other Officers of the United States, whose Ap-

3. 9 Weekly Comp. of Pres. Docs. 122 (1973). Although the defendant was appointed Acting Director of OEO on January 31, 1973, it would appear that he took action as Acting Director as early as January 29, 1973. The defendant issued on January 29 a memorandum regarding the "termination of section 221 [Community Action Agency] funding." That plan was enjoined by this Court in Local 2677, A.F.G.E. v. Phillips, 358 F.Supp. 60 (D.D.C.1973). Therefore

the relief granted by the Court, infra, will date from January 29, 1973, rather than the putative appointment date of January 31, 1973.

4. The delegation is item 1 of exhibit B to the Court's request for filing of OEO delegations of authority.

5. Plaintiffs' Statement of Material Facts as to Which There Is No Dispute, No. 3. This statement was controverted by the defendant only as being irrelevant.

pointments are not herein otherwise provided for, and which shall be established by Law: but the Congress may by law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments.

The President shall have Power to fill up all Vacancies that may happen during the Recess of the Senate, by granting Commissions which shall expire at the End of their next Session.

Thus, the plaintiffs argue, the Constitution dictates that all federal officers not otherwise provided for in the Constitution shall be nominated by the President and appointed with the advice and consent of the Senate except as the Congress may otherwise provide by law for that power in the President or others. The OEO director is an officer of the United States and the Congress has not provided specifically for the position to be filled in any manner other than the nomination and confirmation process described in Article II. The plaintiffs would, however, find the authority to fill the vacancy created by Sanchez's resignation in the general law dealing with the filling of vacancies in office by the President (the Vacancies Act of 1868, as amended, 5 U.S.C. §§ 3345-49 (1970)).[6] But the plaintiffs assert that because the terms of that Act limit the term of appointments under it to 30 days, 5 U.S.C. § 3348, the defendant Phillips has been serving unlawfully in office since March 3, 1973, 30 days after his January 31, 1973, appointment as Acting Director.

The defendant counters with two different arguments: first, that the Presi-dent has the constitutional power to appoint officers of the United States without Senate confirmation deriving from his obligation under Article II, section 3, to "take Care that the Laws be faithfully executed;" and, second, that the Vacancies Act is inapplicable on its face to the Director of OEO and thus was not required to be followed, as it was not, in this case. Because the main thrust of the defendant's argument has gone to the inapplicability of the Vacancies Act, that argument will be treated first.

The basic argument is that because the Vacancies Act on its face is applicable only to Executive and military departments, the office of Director of OEO is not subject to its strictures because OEO is not an Executive or military department as those terms are defined in 5 U.S.C. §§ 101 and 102 (1970).[7] Certainly it is true that OEO is not an Executive or military department as those terms are defined. OEO is what section 104 of title 5 defines as an independent establishment—one in the Executive branch other than, with enumerated exceptions, an Executive or military department. But the facial inapplicability of the Vacancies Act to the appointment in question does not establish the legality of the appointment. The question remains, by what authority does the defendant serve in office if he was not appointed pursuant to the Vacancies Act.

The constitutional provision governing the appointment of federal officials is clear in its mandate. Unless Congress has vested the power of appointment of an officer in the President, the Courts, or a Department head, he

---

6. Briefly, the Vacancies Act provides that when the head of an Executive or military department, or an officer of a bureau of an Executive or military department whose appointment is not vested in the department head, dies, resigns, or is sick or absent, his first assistant performs his duties until a successor is appointed or the absence or illness stops. The President may direct that another department head or officer subject to Senate confirmation may perform those duties instead of the first assistant. A vacancy caused by death or resignation can be filled through these provisions for 30 days. The Act provides that it is the exclusive method for filling vacancies covered by the Act except those occurring during a Senate recess.

7. The Executive departments are the 11 Cabinet departments. The military departments are the Army, Navy and Air Force.

may be appointed only with the advice and consent of the Senate, unless that body is in recess. Although no clear case interpreting this provision has arisen, there are several sources which favor that interpretation.

In Ex parte Siebold, 100 U.S. 371, 25 L.Ed. 717 (1880), the Court upheld the validity of an Act of Congress authorizing the appointment of supervisors of elections by circuit courts of the United States notwithstanding the claim that the duties of the supervisors were executive in character. The Court recognized that under Article II, section 2, of the Constitution, Congress had the power to vest by law the appointment of inferior officers of the federal government in the President alone, in the Courts, or in the heads of Departments. And it declared, with respect to the appointment of the supervisors, that "as the Constitution stands, the selection of the appointing power, as between the functionaries named, is a matter resting in the discretion of Congress." *Id.* at 397–398. *See also* United States v. Eaton, 169 U. S. 331, 343, 18 S.Ct. 374, 42 L.Ed. 767 (1898).

■ Two opinions of the Attorney General contain similar language indicating that the President must obtain the advice and consent of the Senate on all appointments of officers of the United States [8] whose appointments have not been otherwise vested by Congress in the President, the Courts, or a Department head. In early 1885 a question arose as to whether the President or the Secretary of the Treasury had the power to appoint the assistant collector at the port of New York. Congress had provided previously that the office be filled by the Secretary. In the revision of the statutes, however, the provision was omitted and thus repealed, so that the office of assistant collector remained but without any statutory provision on the

manner in which it was to be filled. The Attorney General advised the President that in the absence of any statutory provision, the power of appointment lay in the President with the advice and consent of the Senate as set forth in Article II, section 2, of the Constitution. 18 Op. Att'y Gen. 98 (1885).

Similarly, in 1886 the question was who should appoint the chief examiner of the Civil Service Commission. The act creating the position did not specify who had that power. The Attorney General reasoned that because the chief examiner of the commission would be an officer of the United States established by law, the power to fill the position would rest in the President subject to Senate confirmation. 18 Op. Att'y Gen. 409 (1886).

Ex parte Siebold, *supra,* and the opinions of the Attorney General give strong indication that in the absence or repeal of a statute vesting an appointment outside the nomination and confirmation process, that process is the exclusive means for appointing federal officers.

■ The defendant, however, would answer the question of by what authority he does serve in office by finding in the President a direct constitutional power to appoint officers temporarily without restriction to Executive branch positions outside the Executive and military departments. This argument is premised on the words of Article II, section 3, of the Constitution, which obligate the President to "take Care that the Laws be faithfully executed." In support of that proposition two opinions of the Attorney General are cited. Neither supports the finding of such a temporary appointive power.

The first opinion, 6 Op. Att'y Gen. 357 (1854), concerned the appointment of Navy pursers in the "distant service." Two acts of Congress created a

---

8. The Director of OEO is undoubtedly an officer of the United States because of the provision requiring Senate confirmation. He is not a mere agent or employee who is not an officer and whose employment may be outside the confirmation process. *See* United States v. Hartwell, 73 U.S. (6 Wall.) 385, 18 L.Ed. 830 (1867); Burnap v. United States, 252 U.S. 512, 40 S.Ct. 374, 64 L.Ed. 692 (1920).

new requirement that all Navy pursers be appointed by the President by and with the advice and consent of the Senate except those in the emergency circumstance of "distant service." The Attorney General concluded that these two acts gave the President the power to issue regulations concerning such appointments in the "distant service," independently of the power to issue regulations for the Navy granted the President by a third act. He did not conclude, as the defendant asserts, that the President has the inherent authority to make temporary appointments to all positions requiring nomination and confirmation.

The second opinion of the Attorney General cited by the defendant, 25 Op. Att'y Gen. 258 (1904), dealt with the power of the President to fill vacancies temporarily while the Senate was not in session by assigning one officer to perform the duties of another. The opinion concluded that the President had both the constitutional power and the statutory authority temporarily to fill a vacancy occurring during a Senate recess. The opinion was not directed to the appointment during a Senate session, as here, of one who was not an officer to hold the position and, as in the previous opinion, was addressed to an emergency situation.

Whatever the merits of the argument finding an interim appointment power in the President may be, it is clear from the defendant's own citation of authority that that power, if it exists at all, exists only in emergency situations. No claim has been made that the appointment of Phillips was necessitated by any emergency situation and the Court finds that there was none, and thus expresses no view on the existence or scope of such a power.

Several constitutional problems are presented by a temporary appointive power of the President as interpreted by the defendant. If the President has an inherent (or more properly, derivative) power to make temporary appointments of federal officers under his obligation to faithfully execute the laws, then the Vacancies Act would be unconstitutional. If the President has a constitutional power to make temporary appointments, then Congress cannot limit the exercise of that power as it has through the Act. But the defendant himself claims the power to temporary appointment only for those officers not covered by the Vacancies Act. For this Court to hold that the President has the constitutional authority to appoint temporary officers only if they are not covered by the Vacancies Act or similar legislation, see *infra,* would place a strange construction indeed on a constitutional power.

Moreover, a Presidential power to appoint officers temporarily in the face of statutes requiring their appointment to be confirmed by the Senate, such as is required for the OEO director by 42 U.S.C. § 2941(a) (1970),[9] would avoid the nomination and confirmation process of officers in its entirety. Constitutional provisions cannot be given such an interpretation.

The plaintiffs urge that the Vacancies Act be held to apply to all Executive agency temporary appointments, as was the original Congressional intent.[10] This construction would avoid a potential constitutional conflict between the requirement that all officers be nominated by the President and confirmed by the Senate in the absence of contrary legislation, and the possible emergency power of the President to make temporary appointments argued for by the de-

---

9. For the defendant to claim, as is done at p. 9 of the Points and Authorities in Support of Defendant's Motion to Dismiss and in Opposition to Plaintiffs' Motion for Summary Judgment, that 42 U.S.C. § 2941(a) is inapplicable to the present case because the President appointed him Acting Director rather than Director is without merit. The appoint-

ment and confirmation process of Article II, section 2, of the Constitution cannot be so evaded.

10. Statements on the Senate Floor by Senator Trumbell, the principal Senate sponsor of the Act, indicate that it was to apply to all vacancies in the Executive branch requiring confirmation. 39 Cong. Globe S1163–64 (1868).

fendant. The position urged by the plaintiffs is unsound.[11]

The codification of title 5 of the United States Code in 1966, Pub.L. No. 89–554, 80 Stat. 378, which contains the Vacancies Act, was enacted into law two years after the passage of the Economic Opportunity Act of 1964, Pub.L. No. 88–452, 78 Stat. 519. The definition in 5 U.S.C. § 101, note 7, *supra*, of Executive department as used in the Vacancies Act did not include OEO. The Congress has amended section 101 twice since the codification and has not included OEO on either occasion.[12] Thus it cannot be assumed that Congress failed to include OEO in the terms of the Vacancies Act by mere oversight, and that Congress intends that the Act cover the OEO Director. The more reasonable interpretation is that Congress intended to foreclose the possibility of the Executive making a temporary appointment of the OEO Director.

Congress has shown through legislation other than the Vacancies Act that it knows how to provide for an acting administrator of Executive agencies not contained within the Executive departments. The Administrator of Veterans' Affairs, the head of the Veterans' Administration, is nominated by the President and confirmed by the Senate. 38 U.S.C. § 210(a) (1970). Section 210(d) of that title provides for the appointment of a Deputy Administrator by the Administrator, and further that:

> The Deputy Administrator shall perform such functions as the Administrator shall delegate and, unless the President shall designate another officer of the Government, shall be Acting Administrator of Veterans' Affairs during the absence or disability of the Administrator or in the event of a vacancy in the Office of Administrator.

Section 210(d) was added by Pub.L. No. 89–361, 80 Stat. 29, only six months prior to the codification of the Vacancies Act in title 5.

The Comptroller General, the head of the General Accounting Office, and the Deputy Comptroller General, are appointed by the President by and with the advice and consent of the Senate. 31 U.S.C. § 42 (Supp. I, 1971). In the event of the absence or incapacity of the Comptroller General, or during a vacancy in that office, the Deputy Comptroller General shall act as Comptroller General. *Id.* In addition to this method of temporarily filling vacancies, the Congress has provided in 31 U.S.C. § 43a (1970) that:

> The Comptroller General shall designate an employee of the General Accounting Office to act as Comptroller General during the absence or incapacity of the Comptroller General and the Assistant Comptroller General [now called the Deputy Comptroller], or during a vacancy in both of such offices.

In these statutes the Congress has provided a detailed ordering of authority in the event of a vacancy, and thus must it be presumed to know how to provide for that contingency outside the Vacancies Act.[13] The defendant contends in his post argument memorandum

---

11. It would appear that the defendant would not be validly serving in office even if the Vacancies Act were held to be applicable to OEO. The defendant has not succeeded to his post through either 5 U.S.C. § 3345 or 3346 because he concededly was not the first assistant to former Director Sanchez at the time of the appointment. No basis for the temporary appointment is found in § 3347 because the defendant admittedly was not an official whose appointment had been confirmed by the Senate. Finally, § 3349 is inapplicable because the Senate was in session on January 31, 1973, the date of the appointment.

12. Pub.L.No.89–670, § 10(b), 80 Stat. 948, added the Department of Housing and Urban Development and the Department of Transportation to the definition of Executive department. Pub.L.No.91–375, § 6(c)(1), 84 Stat. 775, deleted the Post Office Department from that definition when it was made an independent corporation.

13. In addition to the provisions for vacancies discussed in the text, there are several

that these statutes are a Congressional recognition of the President's inherent temporary power of appointment. But Article II, section 2, *supra,* clearly vests all appointments in the President subject to the advice and consent of the Senate, unless the Congress vests that power elsewhere by law. The vacancies statutes cited are clear examples of the vesting by the Congress of an appointive power in the President or Department head alone that would not otherwise exist. Congress has merely exercised the power conferred upon it by the Constitution.

■ Thus the failure of the Congress to provide legislation for an acting director must be regarded as intentional. The Court holds that in the absence of such legislation or legislation vesting a temporary power of appointment in the President, the constitutional process of nomination and confirmation must be followed.[14] Therefore, the Court finds that the defendant Phillips was not appointed lawfully to his post as Acting Director of OEO. An injunction will issue to restrain him from taking any actions as Acting Director of OEO.

others, including some in which both the chief and deputy are appointed by the President by and with the consent of the Senate. The following list is not intended to be exhaustive, but merely illustrative: General Services Administration 40 U.S.C. §§ 751(b) and (c) (1970) ; Small Business Administration, 15 U.S.C. § 633 (b) (1970) ; Environmental Protection Agency, Reorganization Plan No. 3 of 1970, §§ 1(b) and (c), eff. Dec. 2, 1970, 84 Stat. 2086 (42 U.S.C. § 4321 note (1970)) ; Office of Telecommunications Policy, Reorganization Plan No. 1 of 1970, § 3, eff. Apr. 20, 1970, 84 Stat. 2083 (47 U.S.C. § 305 note (1970)) ; Action, the agency which administers Vista, the Peace Corps, and similar programs, Reorganization Plan No. 1 of 1971, §§ 1(b) and (c), eff. July 1, 1971, 85 Stat. 819 (42 U.S.C. § 2991 note (Supp. I, 1971)). The defendant urges at note 3 of his post argument memorandum that because the Executive proposed the above cited reorganization plans pursuant to the Reorganization Act of 1949, as amended, 5 U.S.C. § 901 et seq. (1970), those vacancy provisions were issued by the Executive rather than the Congress as part of the President's inherent temporary power of appointment. But the Reorganization Act gives those plans the effect of statutory law only upon action or inaction by the Congress, 5 U.S.C. § 906(a), and thus the mere proposal of the plan by the President is ineffective without Congressional approval. This in effect recognizes the absence of an inherent temporary power of appointment in the Executive.

14. The wisdom of the nomination and confirmation process, even in the light of the President's Executive powers, was pointed out by Alexander Hamilton in The Federalist No. 76. In answering critics of the Constitution who felt that the President should have the sole authority to appoint federal officials, Hamilton pointed out that the nomination and confirmation process did vest the power of choice in the President because "no man could be appointed but on his previous nomination, [and] every man who might be appointed would be, in fact, his choice." *Id.* at 89 (Tudor Pub. Co. ed. 1947). Hamilton pointed out further that the Senate would be reluctant to overrule nominations frequently because they could not be certain that any subsequent nominee would be one to their liking. Finally, he noted that the confirmation requirement would check the possible evil of vesting the appointment power solely in the President:

To what purpose then require the cooperation of the Senate? I answer, that the necessity of their concurrence would have a powerful, though, in general, a silent operation. It would be an excellent check upon a spirit of favoritism in the President, and would tend greatly to prevent the appointment of unfit characters from State prejudice, from family connection, from personal attachment, or from a view of popularity. In addition to this, it would be an efficacious source of stability in the administration. *Id.* at 89.