June 15, 1977

## 77–38 MEMORANDUM OPINION FOR THE COUNSEL TO THE PRESIDENT

### Power of the President to Designate Acting Member of the Federal Home Loan Bank Board

This is in response to your inquiry as to whether the President has the power to designate an individual to perform the duties of and act as a member of the Federal Home Loan Bank Board (hereafter "the Board") pending the appointment of a member of the Board by the President by and with the advice and consent of the Senate. We believe that the President has this power, but that its exercise may be subject to judicial or congressional challenge absent the submission of a nomination for that office prior to or within a reasonable time after the designation of the acting member.

The Board is an independent Agency in the executive branch. 12 U.S.C. § 1437(b). It consists of three members appointed by the President by and with the advice and consent of the Senate. The members serve staggered terms expiring on June 30 of the relevant year. Reorganization Plan No. 3 of 1947, § 2, 12 U.S.C. § 1437, note. There is no holdover provision.

There is now a vacancy on the Board. We understand that the President is about to submit a nomination for the position to the Senate. It is possible, however, that the Senate may not confirm the nominee prior to June 30. On that date the term of another Board member will expire. It thus may be that beginning July 1, 1977, there will be only a single member of the Board. It generally is recognized that a collective body is empowered to act only if a quorum consisting of a simple majority is present. *See, FTC* v. *Flotill Products,* 389 U.S. 179, 183 (1967).

We assume that many, especially routine, functions of the Board have been delegated to subordinate officers. Still, the Board will not be able to make the more important decisions that it has reserved to itself. This raises the question of whether the President has the power to prevent such an incapacity of the Board by making temporary designations of acting members.

As stated above, the Board is an independent Agency within the executive branch. Whatever the term "independent" may mean in this context, the continued functioning of the Board is plainly included in the constitutional responsibility of the President as the head of the executive branch to take care that the laws be faithfully executed.

In the Vacancy Act (5 U.S.C. §§ 3345–3349) Congress has given the President specific authority to make such temporary designations in the executive and military departments for a period not in excess of 30 days. The Board, however, is not such a department. *See* 5 U.S.C. §§ 101, 102. It is necessary to consider, therefore, whether the President has the power to make such designations with respect to agencies other than those departments, absent statutory authority.

This Office has taken the position that the power to make such interim designations flows from the President's responsibility to keep executive branch agencies in operation; hence, that the Vacancy Act is not a source, but rather a regulation of that power. This view was challenged in *Williams* v. *Phillips,* 360 F. Supp. 1363 (D.C.C. 1973). In that case the District Court took the position that the President could make a temporary designation to the position of Director of the Office of Economic Opportunity, a position that required Senate confirmation, only in the presence of a statutory authorization. This view apparently was based on the assumption that such a temporary designation constituted an appointment; it also ignored a governmental practice going back more than a century.

The Government sought a stay in the Court of Appeals pending appeal. While that court denied the stay (482 F. 2d 669), it did indicate that it did not necessarily agree with the theory of the District Court. It said that it could be argued that the President had the "implied [constitutional] power in the absence of limiting legislation . . . to appoint an acting director," for a reasonable period of time before submitting the nomination of a new director to the Senate. 482 F. 2d at 670. But even if that view were sustained, it would not establish that the President was entitled to wait for 4–1/2 months before submitting such nomination. At 670–671. The Court of Appeals said that the measure of a reasonable period for the submission of a nomination would be the 30-day period provided by the Vacancy Act. It therefore denied the stay because it was not likely to hold that the President was entitled to retain the acting official in office for a 4–1/2 month period without any nomination. *Ibid.* It stated:

> ". . . Assuming, without deciding, that the court on the merits might disagree with the District Court's approach and might conclude that Phillips' appointment was not invalid *ab initio,* this would not undercut the determination as to the prospective invalidity of his holding office." 482 F. 2d at 671.

The opinion of the Court of Appeals can perhaps be read as disagreeing with the approach of the District Court, namely, that no designa-

151

tion to fill a vacancy can be made in the absence of an authorizing statute; similarly, as perhaps agreeing with the Government's view that the President does have the power to fill a vacancy pending confirmation in the absence of a limiting statute, subject, of course, to the condition that he must submit a nomination within a reasonable time. It is to be noted that this condition is far less rigid than the 30-day limitation of the Vacancy Act.[1] It permits service beyond that period where the President has submitted a nomination within the period but the Senate has not acted on the nomination before the period has expired.

It may be safe, but obviously not absolutely so, to regard the Court of Appeals opinion as indicating that the court would be chary about holding that the President lacks the power to fill vacancies temporarily, in the absence of authorizing legislation, if he submits a nomination prior to or within a reasonable time following the designation. The 30-day period of 5 U.S.C. 3348 would be considered a guideline as to what constitutes a reasonable period. This view would certainly be strengthened if the person designated by the President were, in analogy to 5 U.S.C. 3347, a current official appointed after Senate confirmation.

In recent months this Office has given similar advice respecting the Community Services Administration and the United States Arms Control and Disarmament Agency. We may mention that, as far as we know, this question has not arisen in the past in connection with a multimember agency. The reason for this is probably that, as a rule, a vacancy in such an agency does not deprive it of a quorum and thus does not impede its operations in a substantial way. However, where, as here, a vacancy in the Agency has the effect of seriously impeding its

---

[1] The Attorney General has interpreted 5 U.S.C. 3348 in its application to the executive departments to the effect that the power of an acting official comes to its end on the 30th day following the day on which the vacancy arose even though a nomination is pending. For the operation of the Vacancy Act in such a situation, *see* 32 Op. A.G. 139 (1920), which involved the following: Upon the resignation of the Secretary of State, the Under Secretary of State became Acting Secretary by operation of the Vacancy Act. Thereafter a nomination for Secretary of State was submitted. On March 13, 1920, the Acting Secretary advised the Attorney General that the 30-day period of the Vacancy Act had expired without the confirmation of the nominee and asked for advice about his status. The Attorney General advised the Under Secretary that in view of the expiration of the 30-day period it would be "probably safer to say that you should not take action in any case out of which legal rights might arise which would be subject to review by the courts."

In 1880 the Attorney General advised the Secretary of the Treasury that because the office of the Secretary of the Navy had been vacant in excess of the statutory period (then 10 days), no person in the Department of the Navy was authorized to sign requisition on the Department of the Treasury on account of Navy payments. 16 Op. A.G. 596 (1880).

functions the reasons which, in our opinion, authorize the President to designate a person to perform the duties of an office filled by a single official should apply with equal force to a multimember agency.

LEON ULMAN
*Deputy Assistant Attorney General*
*Office of Legal Counsel*
