**Robert P. GEORGE, Plaintiff,**

v.

**Stuart J. ISHIMARU, "Acting" Staff Director of the United States Commission on Civil Rights, Defendant.**

**Civil Action No. 94–0424 (RCL).**

United States District Court,
District of Columbia.

April 6, 1994.

Charles Justin Cooper, Shaw, Pittman, Potts & Trowbridge, Washington, DC, for plaintiff.

Margaret S. Hewing, U.S. Dept. of Justice, Civil Div., Washington, DC, for defendant.

Jack B. Gordon, Fried, Frank, Harris, Shriver & Jacobson, Washington, DC, for intervenor.

## BENCH RULING

LAMBERTH, District Judge.

This matter comes before the court on plaintiff's motions for a preliminary injunction and for summary judgment, and defendant's cross-motions to dismiss and for summary judgment.

The motions have been fully briefed and orally argued today.

The court finds there are no genuine issues of any material facts which are in dispute.

Because review by the Court of Appeals will be *de novo*, there is no reason to delay disposition of this matter for preparation of a formal written opinion. Therefore the court announces the following findings of fact and conclusions of law. A written order will be issued today granting plaintiff's motion for summary judgment and denying defendant's dispositive motions. In light of the court's final decision today on the merits of the controversy, plaintiff's motion for preliminary injunction will therefore be denied as moot.

## FINDINGS OF FACT

1. Plaintiff, Robert P. George, is one of eight commissioners of the United States Commission on Civil Rights.

2. Defendant, Stuart J. Ishimaru, has been designated by President Clinton as the Acting Staff Director of the Commission on Civil Rights.

3. When originally created by Congress as part of the Civil Rights Act of 1957, there were six Commissioners, each of whom was appointed by the President with the advice and consent of the Senate. P.L. 85–315 § 101(b), codified at 42 U.S.C. §§ 1975–1975e. At that time, Congress also provided that the Commission's staff director would be appointed by the President with the advice and consent of the Senate. P.L. 85–315, § 105(a).

4. The Commission was reorganized by Congress in 1983. There are now eight Commissioners. Four are appointed by the President; two are appointed by the President *pro tempore* of the Senate; and two are appointed by the Speaker of the House of Representatives. 42 U.S.C. § 1975(b)(1). The Commissioners serve staggered six-year terms, pursuant to § 1975(b)(2).

5. The President has the power to designate a Chairperson and a Vice–Chairperson from among the eight Commissioners, but Congress expressly provided that to do so, the President had to act "with the concurrence of a majority of the Commission's members." 42 U.S.C. § 1975(c).

6. The statute as enacted in 1983 also provides that "[t]here shall be a full-time staff director for the Commission who shall be appointed by the President with the concurrence of a majority of the Commission." 42 U.S.C. § 1975d(a)(1).

7. When President Clinton took office, the staff director's position was vacant. One of the Commission's regional directors (Mr. Bobby Doctor) had to come to Washington from Atlanta to serve as "acting" staff director, and he had been named by the outgoing staff director on January 21, 1993, to be "acting" staff director.

8. A majority of the Commission—five of the eight members—sent a letter to President Clinton on June 3, 1993, endorsing Mr. Doctor, then the "acting" staff director, to be appointed by the President as staff director.

9. In late September 1993, the Chairperson of the Commission was advised by a Special Assistant to the President at the White House that President Clinton intended to appoint the defendant herein, Stuart Ishimaru, as staff director.

10. On October 1, 1993, the Chairperson of the Commission sent a letter to the White House indicating that he would not concur in the appointment of Ishimaru as staff director, nor would a majority of the Commission.

11. Thereafter, the President's nomination of Mary Frances Berry to be Chairperson of the Commission was confirmed by a majority of the Commissioners on November 19, 1993.

12. Newly appointed Chairperson Berry then, on November 22, 1993, terminated Mr. Doctor's detail to Washington and he returned to his position as regional director of the Commission's staff in Atlanta.

13. On November 26, 1993, plaintiff, Commissioner George, sent a memorandum to the acting general counsel of the Commission, Lawrence Glick, requesting an opinion as to the legality of the Chairperson's actions in terminating Mr. Doctor's detail.

14. On November 29, 1993, the acting general counsel prepared a memorandum for the Commissioners concluding that the Chairperson did not have the authority to take such unilateral personnel actions. The same day, Mr. Glick was removed by the Chairperson from serving as acting general counsel.

15. On December 2, 1993, President Clinton appointed defendant Ishimaru as "acting" staff director.

16. The next day, December 3, 1993, a majority of the Commissioners voted to reinstate Mr. Doctor as acting staff director. The Chairperson ruled the vote was "without force or effect because the President has

already named somebody" as Acting Staff Director.

17. The Office of Legal Counsel of the Department of Justice subsequently issued a legal opinion on January 13, 1994, "that the Constitution vests the President with authority to appoint an Acting Staff Director for the Commission on Civil Rights and that the Commission has no authority to override the President's appointment."

18. The next day, a majority of the Commission voted on a motion to confirm President Clinton's appointment of defendant Ishimaru as Acting Staff Director, and by a vote of four against, with one abstention, and three who refused to vote, defendant Ishimaru was not confirmed as Acting Staff Director. Plaintiff George was one of the majority of the Commission who voted not to confirm defendant Ishimaru.

19. Defendant Ishimaru has continued for over four months as "acting" staff director, and performs his duties in all aspects as if he is lawfully appointed to his position.

20. President Clinton has still not nominated a staff director or sought the concurrence of a majority of the Commission.

21. The President's designation of defendant Ishimaru as "acting" staff director on December 2, 1993, came only after the President had been informed by the Chairperson of the Commission that a majority of the Commission would not concur in the appointment if defendant Ishimaru was nominated to be Staff Director. The President thereupon named defendant Ishimaru as "acting" staff director, and has not nominated anyone to be staff director.

### CONCLUSIONS OF LAW

1. The parties agree that the staff director is not "an officer of the United States" in the constitutional sense, since the commission is purely investigative and fact-finding. Accordingly, neither the Commissioners nor the staff director need to be appointed as "officers" in accordance with the Appointments Clause of the Constitution. U.S. Const., Art. II, § 2, Cl. 2. For the same reason, the Recess Appointments Clause does not apply to the Commission. Art. II, § 2, Cl. 3.

2. The parties agree, therefore, that there is no constitutional impediment to Congress enacting the statutory requirement here that the President's appointment of a staff director receive the concurrence of a majority of the Commission.

3. The parties agree that the Vacancies Act does not apply to the staff director's position, since he is not a constitutional officer.

4. The parties agree that the only *statutory* authority for the appointment of the staff director is the provision in 42 U.S.C. § 1975d(a)(1), vesting appointment authority in the President "with the concurrence of a majority of the Commission."

■ 5. The statute is not silent. It does not contain the words "acting" or "permanent" staff director; it simply provides that the staff director shall be appointed by the President with the concurrence of a majority of the Commissioners. It does not provide the President authority to appoint a staff director in any other way. This legislation does act as a limitation on the President's power to act.

■ 6. President Clinton neither sought nor received the concurrence of a majority of the Commission for the appointment of defendant Ishimaru as staff director.

7. The court finds that President Clinton therefore violated the statute when he named defendant Ishimaru as "acting" staff director, without the concurrence of a majority of the Commissioners.

8. Congress chose, in the enabling statute here, to vest appointment authority over the staff director *jointly* in the President and a majority of the Commission. The President has violated this statute by acting unilaterally.

■ 9. The court understands that this is a matter of first impression. This court rejects the argument that the President has "inherent" appointment authority under the Take Care Clause of Article II of the Constitution to appoint persons to positions like this one, where Congress has unlimited au-

thority to vest the appointment power in whomever it chooses. No court has ever recognized that the President has such inherent authority.

10. The court finds that it has jurisdiction pursuant to 28 U.S.C. § 1331, the federal question statute, to determine whether defendant Ishimaru was lawfully appointed as "acting" staff director of the Commission, and that there is no sovereign immunity, under *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949), for the acts of a federal official, or purported federal official, who is acting in excess of his authority or under an authority not validly conferred. Pursuant to the All Writs Act, 28 U.S.C. § 1651, this court has the power to issue the requested injunction.

■ 11. The Amendments to the Administrative Procedure Act in 1976 were designed to broaden judicial review, and did not repeal the *Larson* doctrine allowing judicial review here. The provisions of *Larson* overturned by the APA amendments were those that restricted judicial review. The court agrees with plaintiff that the D. C. Circuit in *M.B. Schnapper v. Foley*, 667 F.2d 102 (D.C.Cir.1981) *cert. denied* 455 U.S. 948, 102 S.Ct. 1448, 71 L.Ed.2d 661 (1982) and *Rameriz de Arellano v. Weinberger*, 745 F.2d 1500 (D.C.Cir.1984), *vacated* and *remanded on other grounds*, 471 U.S. 1113, 105 S.Ct. 2353, 86 L.Ed.2d 255 (1985), are not contrary to this court's ruling today. The *Larson ultra vires* line of cases is still valid law today, and authorizes this court today to grant the requested relief.

■ Defendant has no delegated authority whatsoever, and every act he takes is *ultra vires*.

■ The court finds that under *Dugan v. Rank*, 372 U.S. 609, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963) this injunction won't affect the sovereign. There are exceptions for *ultra vires* acts that allow the court to enjoin such *ultra vires* acts. I am not enjoining the sovereign—I am enjoining the *ultra vires* actions of the defendant Ishimaru.

■ 12. The court also concludes that plaintiff has standing to maintain this action. There is nothing in the enabling statute here that says a Commissioner cannot participate in the selection of an "acting" staff director, and that he is only entitled to concur in the nomination of a "permanent" staff director. Plaintiff has been denied the right to participate in the selection of an "acting" staff director by the President's unilateral appointment. Indeed a majority of the Commission—including the plaintiff—has voted to oppose this appointment of defendant Ishimaru as "acting" director, but this vote has been for naught because the President asserts that he has "inherent" Presidential power to thwart the vote of the plaintiff, and indeed, of a majority of the Commission.

13. Plaintiff has been deprived of his statutory right to vote on this nomination, and this is a concrete, particularized, and actual harm that establishes his standing to sue. It also constitutes "injury in fact", just as in *Williams v. Phillips*, 360 F.Supp. 1363 (D.D.C.1973), *aff'd* 482 F.2d 669 (D.C.Cir. 1973). Just as the Senators in *Williams* had standing to challenge the deprivation of their constitutional right to vote on Howard Phillips' appointment as head of O.E.O., plaintiff has standing to challenge the deprivation of his right to vote on a presidential nomination to the position of staff director.

14. Moreover, plaintiff did in fact vote, and he voted with a majority of the Commission to not confirm defendant Ishimaru as "acting" staff director, yet his vote has been ignored. This also constitutes "injury in fact."

■ 15. Because the court finds that the Commission's enabling statute is the exclusive method for appointing the staff director, the plaintiff's statutory right as a Commissioner to participate in that appointment has been denied, and this is not a claim that can only be brought by a majority of the Commission. The District Court in the *Williams* case held that each Senator who had a vote had standing to sue over President Nixon's invalid appointment of Phillips as "acting" Director of O.E.O. I hold that each Commissioner of the Civil Rights Commission here has standing to sue over President Clinton's

invalid appointment of defendant Ishimaru as "acting" staff director of the Commission on Civil Rights.

16. Plaintiff is asserting a statutory right that is specifically granted to him as an individual member of the Commission. This court rejects the defendant's argument that individual members of collegial bodies cannot sue under these circumstances unless they are joined by a majority of the collegial body.

17. Just as in *Olympic Federal Sav. and Loan Asso. v. OTS*, 732 F.Supp. 1183 (D.D.C.), *appeal dism.*, 903 F.2d 837 (D.C.Cir.1990), the appointment process here subjects the selection process to public scrutiny, thereby affecting who takes office, how they perceive their function, and how they exercise their powers. Plaintiff has a statutory right to participate in that process that has been denied by the President's unilateral appointment of an "acting" staff director, and the President's failure to nominate a staff director.

18. The court is not unsympathetic to the government's argument that it needs to continue to function. But the government must function in a lawful manner. The court is hopeful that President Clinton will promptly consult with the Commission and appoint a staff director who has the confidence of a majority of the Commissioners and who can be quickly confirmed. Today's decision can then be vacated as moot, just as was my decision in *Olympic Federal Savings and Loan*. There, I declared the Office of Director of Office of Thrift Supervision, a federal agency with thousands of employees, to be vacant. The President appealed, as I'm sure President Clinton will here. But the President also quickly picked a new director, who was promptly confirmed, and my ruling became moot. I hope the same will happen here. After all, the statutory scheme is for the President, *jointly*, with a majority of the Commission, to appoint a staff director. The important work of the Commission on Civil Rights should not be impeded by continuing to argue about "inherent" Presidential power which no court in the nation's history has ever recognized.

Because the defendant Ishimaru was not validly appointed, he has no lawful authority to act, and the court will issue an injunction this date enjoining defendant from continuing to function as staff director or acting staff director of the Commission.

The court issues this written bench ruling based on the oral findings of fact and conclusions of law read in open court this date.

A separate order shall issue.

### ORDER

For the reasons set forth on the record in open court today, this court hereby ORDERS that:

1. Defendant's motion to dismiss is DENIED.

2. Defendant's motion for summary judgment is DENIED.

3. Plaintiff's motion for summary judgment is GRANTED.

4. Plaintiff's motion for preliminary injunction is DENIED as moot.

5. Defendant Stuart J. Ishimaru is, from this date forward, permanently enjoined from representing himself as the staff director or the "acting" staff director of the United States Commission on Civil Rights ("Commission"), and from exercising the authorities and performing the functions of staff director of the Commission until such time as his appointment receives the concurrence of a majority of the members of the Commission.

6. Defendant's request for a stay pending appeal is DENIED.

SO ORDERED.