Lee **METCALF**, U. S. Senate, and
Robert Clarke Brown,
Plaintiffs,

v.

**NATIONAL PETROLEUM COUNCIL**
et al., Defendants.

Civ. A. No. 75–397.

United States District Court,
District of Columbia,
Civil Division.

Feb. 9, 1976.

Victor H. Kramer, Richard B. Wolf, and Catherine C. Cook, Washington, D. C., for plaintiffs.

Cornelius B. Kennedy, and Charles Lister, Washington, D. C., for defendants National Petroleum Council, John E. Swearingen and Kenneth E. BeLieu.

Winston E. Miller, Dept. of Justice, Washington, D. C., for defendants Rogers C. B. Morton, Dept. of the Interior, Frank G. Zarb, Federal Energy Administration, James T. Lynn and Office of Management and Budget.

## MEMORANDUM OPINION

JOHN H. PRATT, District Judge.

This action by Lee Metcalf, a United States Senator, and Robert Brown, a private citizen, seeks declaratory and injunctive relief alleging that the National Petroleum Council (Council), Department of the Interior (Interior), Federal Energy Administration (FEA), Office of Management and Budget (OMB), and certain individuals [1] are in violation of various provisions of the Federal Advisory Committee Act (FACA),[2] and the Federal Energy Administration Act (FEAA).[3]

The gravamen of the complaint is that the Council and its subgroups are unlawfully functioning as advisory committees because they are not fairly balanced in membership and are improperly influenced by certain petroleum industry special interests, contrary to the express requirements of these statutes. Plaintiffs further contend that by unlawfully utilizing the Council's advice in the development of agency policy, programs and recommendations to Congress, and by failing to prevent the unlawful operation of the Council, the federal defendants are acting contrary to law.

The matter immediately before us concerns defendants' motions to dismiss and in the case of federal defendants, the alternative motion for summary judgment. The ground for these motions is that plaintiffs lack standing to maintain this action and, accordingly, the issues raised by the complaint fail to present justiciable claims. This is a threshold question of jurisdiction which arises from the language of Article III of the Constitution which restricts judicial power to "cases" and "controversies."

Speaking in language of general application in a case with a different factual context, the Supreme Court has emphasized that in deciding questions of standing the focus is on the party seeking relief rather than on "whether the issue itself is justiciable." In *Flast v. Cohen,* 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968), the Court elaborated:

"The fundamental aspect of standing is that it focuses on the party seeking to get his complaint before a federal court and not on the issues he wishes to have adjudicated. The 'gist of the question of standing' is whether the party seeking relief has 'alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions.' *Baker v. Carr,* 369 U.S. 186, 204 [82 S.Ct. 691, 703, 7 L.Ed.2d 663] (1962). In other words, when standing is placed in issue in a case, the question is whether the person whose standing is challenged is a proper party to request an adjudication of a particular issue and not whether the issue itself is justiciable." 392 U.S. at 99–100, 88 S.Ct. at 1952.

Subsequently in *Association of Data Processing Service Organizations v. Camp,* 397 U.S. 150, 90 S.Ct. 827, 25 L. Ed.2d 184 (1970), the Supreme Court enunciated a two-pronged test for determining standing to sue. First, the plaintiff must allege that the challenged acts must have caused him "injury in fact, economic or otherwise." 397 U.S. at 152, 90 S.Ct. at 829. Second, "the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute or the constitutional guarantee in question. 397 U.S. at 153, 90 S.Ct. at 830. Expressed differently, there must be "a logical nexus between the status asserted and the claim sought to be adjudicated." *Flast, supra,* 392 U.

---

1. Three individual defendants will not hereafter be separately referred to.

2. 5 U.S.C., App. I (1975 Supp.) §§ 5(b)(2) and 5(b)(3).

3. 15 U.S.C. § 776(a), (d).

S. at 102, 88 S.Ct. at 1953. The application of these criteria controls the disposition of this issue of standing.

A. *Plaintiffs' Allegations of Injury.*

■ Both plaintiffs have alleged three types of injury to themselves as consumers resulting from defendants' activities: (1) Anticipated higher costs for petroleum products; (2) Potential environmental damage and threats to health and safety; and (3) Anticipated denial of benefits from the development of alternative sources of energy. Plaintiff Metcalf, in addition, asserts that he has been and will be injured in the performance of his congressional duties by defendants' allegedly unlawful acts.

Plaintiffs' allegations of consumer injury, even as amplified by plaintiffs' answers to interrogatories and construed in favor of plaintiffs, do not establish a real and immediate injury or threat of injury. They are at best speculative and conjectural and represent grievances shared by all or most of the general public. "Standing to sue may not be predicated upon an interest * * * which is held in common by all members of the public." *Schlesinger v. Reservists to Stop the War,* 418 U.S. 208, 220, 94 S. Ct. 2925, 2932, 41 L.Ed.2d 706 (1973); see also *United States v. Richardson,* 418 U.S. 166, 94 S.Ct. 2940, 41 L.Ed.2d 678 (1973). The concept of justiciability requires plaintiffs to make out a "case" or "controversy" between themselves and defendants. This plaintiffs, as consumers, have not done.

■ In addition to the injuries he alleges as a citizen and consumer, plaintiff Metcalf alleges his status as a United States Senator as a separate and discrete basis for standing. He asserts that defendants' actions have affected the effectiveness of his votes for the FACA and FEAA and have hindered him in carrying out his legislative duties through his inability to get unbiased advice and accurate information from Interior and FEA because of the Council's input into that process. A similar contention was recently made and rejected by this Court in a suit by Congressman Michael Harrington against the Central Intelligence Agency. *Harrington v. Colby,* (Civil Action No. 74–1884, July 3, 1975, appeal pending). Related cases involving unsuccessful claims of congressional status as a basis for standing include *Public Citizen et al. v. Sampson,* 379 F.Supp. 662 (1974) and *Stokes v. General Services Administration,* Civil Action No. 74–163. Both of these cases were affirmed by simple order by the U. S. Court of Appeals for the District of Columbia. 515 F.2d 1018 (1975). See also *Holtzman v. Schlesinger,* 484 F. 2d 1307 (2d Cir. 1973) (where the claim of the establishment of the illegality of the Vietnam War as a basis for possible impeachment proceedings was held not to afford a basis for standing).

Plaintiffs' reliance on *Kennedy v. Sampson,* 511 F.2d 430 (D.C.Cir., 1974) is misplaced. There, it was held that Senator Kennedy had standing to challenge the validity of a Presidential pocket veto of an Act for which he had voted in order "to vindicate the effectiveness of his vote." The Court held that the plaintiff had been injured in his official capacity because the President's action had deprived him of his constitutional right under Article I, Section 7, for an opportunity to override a Presidential veto. 511 F.2d at 436. But plaintiff Metcalf, as had the plaintiffs in *Stokes, supra,* and *Public Citizen, supra,* has already voted in favor of FACA and the FEAA and there is no question or doubt concerning the effectiveness of his votes in the passage of such legislation.

Plaintiff Metcalf in an affidavit supplementing plaintiffs' opposition to defendants' motions spells out the type of injury claimed as a United States Senator. They are that (1) the data and information from Interior and FEA, to the extent that such includes data and advice from the Council, are biased and unreliable, thereby impairing his legislative work because of his need for unbiased data and advice, and (2) further

legislative activities in the direction of correcting these abuses will be adversely affected until the legal issues raised by the complaint are resolved. The very recital of these alleged injuries indicates their lack of substance. Plaintiff Metcalf as a legislator of sophistication and long experience is not a neophyte. It is difficult to accept the premise that he is in any way misled by the data or information received from government agencies such as Interior or FEA or that he is unable to identify and discount any bias arising from the Council's input into that process. As for the necessity of a judicial declaration to determine his future legislative course of action, plaintiff Metcalf is not without a remedy. He is well aware that each standing committee of the Senate (and he is a member of such committee or committees) in the exercise of its legislative review function, is required to "make a continuing review of the activities of each advisory committee under its jurisdiction." (5 U.S.C. App. I, 1975 Supp. § 5(a)) In addition, it is no secret to him that both Interior and FEA are completely dependent on Congress for appropriations. In short, this suit is an effort to obtain an advisory opinion from this Court. Such is forbidden by the "case" or "controversy" requirements of Article III. As was said in a recent case,

> "Pleadings must be something more than an ingenious academic[4] exercise in the conceivable. A plaintiff must allege that he has been or will in fact be perceptedly harmed by the challenged agency action, not that he can imagine circumstances in which he could be affected by the agency's action. And it is equally true that the allegations must be true and capable of proof at trial." *United States v. SCRAP*, 412 U.S. 669, 668–69, 93 S.Ct. 2405, 2416, 37 L.Ed.2d 254 (1973).

### B. *The Nexus Between Plaintiffs' Alleged Injuries and Defendants'*

*Challenged Action as the Cause of Said Injuries.*

Plaintiffs' failure to allege injury adequate to support standing would alone be sufficient grounds to dismiss this suit. There is still a further defect in plaintiffs' position. They have also failed to allege facts from which it could be reasonably inferred that, absent defendants' actions, the injuries alleged would not have occurred and that, if plaintiffs are granted the relief they seek, the injuries would vanish. They have failed to show that their injuries come as the result of the actions challenged herein.

In several recent cases, the Supreme Court has stressed that plaintiff himself must have suffered "some threatened or actual injury *resulting from the putatively illegal action * * *" (Emphasis supplied) [*Linda R.*] S. v. [*Richard*] D., 410 U.S. 614, 617, 93 S.Ct. 1146, 1148, 35 L.Ed.2d 536 (1973). In that case where the mother suffered undoubted injury from the failure of the child's father to make support payments, the Court held that the failure to secure support payments was not shown to have resulted from the nonenforcement of the law, because the relief requested "would result only in jailing the child's father," with only conjectural prospect that prosecution would, in the future, lead to payment of support.

In perhaps the most recent Supreme Court decision on standing, low and moderate income plaintiffs challenged the allegedly restrictive zoning ordinance of the town of Penfield, a suburb of Rochester, New York. The basis of the suit was that they were unlawfully prevented by such zoning from purchasing or leasing houses in Penfield. In holding that the plaintiffs lacked standing, the Court stated:

> "Petitioners must allege facts from which it reasonably could be inferred that, absent the respondents' restrictive zoning practices, there is a sub-

---

4. The address of plaintiffs' counsel is given as 600 New Jersey Avenue, N.W., Washington, D. C. Curiously, this is also the address of the Georgetown University Law Center.

stantial probability that they would have been able to purchase or lease in Penfield and that, if the court affords the relief requested, the asserted inability of petitioners will be removed." *Warth v. Seldin,* 422 U.S. 490 at 504, 95 S.Ct. 2197 at 2208, 45 L.Ed.2d 343 (1975).

In attempting to show that defendants' actions have caused and will cause their injuries, plaintiffs have assumed, if the Council's membership were changed, (1) that Council's advice would be different, (2) that Interior or FEA would act in a certain way or not act upon receipt of said advice, (3) that plaintiffs would not be harmed by such action or inaction, (4) that with different advice from the Council, Interior and FEA would act in a way different from their present actions, and (5) that assuming a different course of conduct by the governmental agencies, such changed conduct would favor plaintiffs' interests. These assumptions in every instance lack record support. They do not provide the factual foundation upon which one could reasonably infer that, in the absence of the defendants' actions which plaintiffs seek to change, the injuries complained of would not and will not occur, and that, if the plaintiffs are granted the relief they seek, that those injuries would cease and disappear.

In concluding, we need only point out that federal courts are courts of limited jurisdiction and that the limitation of federal judicial power to "cases" and "controversies" is predicated on constitutional doctrine of the separation of powers. As was said by the court in a leading case on standing, "federal judicial power is limited to those disputes which confine federal courts to a role consistent with a system of separated powers and which are thought to be capable of resolution through the judicial process." *Flast v. Cohen, supra,* 392 U. S. at 97, 88 S.Ct. at 1951. Consistent with this thought, we are not constituted as the "continuing monitors of the wisdom and soundness of Executive action,"

which is the role of the Congress. Such "is not the role of the judiciary, absent actual present or immediately threatened injury resulting from unlawful governmental action." *Laird v. Tatum,* 408 U. S. 1, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972).

For all the foregoing reasons, we hold that plaintiffs lack standing to maintain this action and therefore grant defendants' motions to dismiss.

An order consistent with the foregoing has been entered this day.