Henry S. REUSS, Plaintiff,

v.

John J. BALLES et al., Defendants.

Civ. A. No. 76–1142.

United States District Court,
District of Columbia.

Dec. 22, 1976.

Grasty Crews, II, Washington, D. C., for plaintiff.

Vincent B. Terlep, Jr., Rex E. Lee, Dept. of Justice, Washington, D. C., for defendants.

## MEMORANDUM OPINION

PARKER, District Judge:

The Honorable Henry S. Reuss, in his capacities as a Congressman[1] and as a bondholder,[2] has filed suit against various individuals who serve as officers of the Federal Reserve Banks and who also serve on the Federal Open Market Committee (Committee or FOMC), and against each of the twelve Federal Reserve Banks in the United States.[3] Since the Committee exercises significant governmental functions, plaintiff contends that all of its members are officers of the United States and as such must be properly appointed pursuant to the Appointments Clause[4] of the Constitution. The Reserve Bank representatives to the FOMC are not appointed in accordance with the Appointments Clause but rather are selected by the boards of directors of the Reserve Banks pursuant to § 12A of the Federal Reserve Act, 12 U.S.C. § 263(a).[5] Plaintiff asks the Court to declare unconstitutional those portions of

1. Plaintiff is a member of the House of Representatives and serves as chairman of that body's Committee on Banking, Currency and Housing. He also serves as chairman of the Subcommittee on International Economics of the Joint Economic Committee.

2. In his amended complaint, plaintiff alleges that he owns certain marketable bonds whose aggregate cost, aggregate market value and aggregate face value exceed $20,000.

3. Plaintiff's motion for leave to amend the second complaint to join the Committee as a party defendant need not be considered in view of the Court's disposition of this case.

4. Art. II, § 2, cl. 2. The Appointments Clause provides that:

[The President] shall nominate, and by and with the Advice and Consent of the Senate, shall appoint Ambassadors, other public Ministers and Consuls, Judges of the supreme Court, and all other Officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by Law: but the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments.

5. Section 263(a) provides in relevant part:

[The] Federal Open Market Committee . . . shall consist of the members of the Board of Governors of the Federal Reserve System and five representatives of the Federal Re-

§ 12A which provide for selection and service on the FOMC of Reserve Bank representatives and to enjoin permanently both the individual defendants from serving on the Committee and the defendant banks from carrying out any instructions issued by the allegedly unconstitutionally constituted Committee.

Plaintiff alleges that the cause of action arises under 28 U.S.C. § 1331 (federal question and jurisdictional amount) and § 1337 (action arises under an act regulating commerce, *viz.*, 12 U.S.C. § 263) and under 12 U.S.C. § 632 (Federal Reserve Bank as a party to the action). He claims that as a Congressman and chairman of the House of Representatives' Committee on Banking, Currency and Housing the defendants are diminishing and usurping his powers. As a bondholder, he claims that he is deprived of his property without due process of law in violation of the Fifth Amendment.

Defendants have moved to dismiss the proceedings for lack of jurisdiction over the subject matter pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, asserting that the plaintiff has no standing to sue. They contend that since he has shown no injury in fact, either as a Congressman or as a bondholder, from the allegedly unconstitutional selection and service of the Reserve Bank representatives on the Committee, there is no case or controversy as required under Article III of the Constitution and that therefore any judgment rendered by the Court would be purely advisory.

Because plaintiff seeks to enjoin enforcement of a federal statute for repugnance to the Constitution, application for a three-judge court has been made. 28 U.S.C. §§ 2282, 2284.[6] However, when a motion to dismiss for lack of standing is presented, a single judge may first determine whether the court has jurisdiction to hear the case before requesting a three-judge court. *Gonzalez v. Automatic Employees Credit Union*, 419 U.S. 90, 100, 95 S.Ct. 289, 42 L.Ed.2d 249 (1974).

The Court has reviewed the complaint, the memoranda of the parties and the relevant case and statutory authority and concludes that this proceeding should be dismissed because the plaintiff lacks standing to maintain this action, either as a Congressman or as a bondholder.

## FACTUAL BACKGROUND

The Federal Reserve System was created by Act of Congress in 1913. It is a central banking system composed of a seven-member Board of Governors, each member appointed by the President and confirmed by the Senate; twelve regional Federal Reserve Banks; the Federal Open Market Committee; the Federal Advisory Council; and those privately-owned commercial banks that are members of the System. 12 U.S.C. § 221 et seq.

The Federal Reserve Banks are organized in the form of private business corporations. The commercial banks which are members of the System[7] own stock with voting rights in the Reserve Bank in their district. Six of the nine members of the board of directors of each Reserve Bank are elected by the member banks; the Board of Governors chooses the remaining three directors and appoints one to serve as chairman and one to serve as deputy chairman of the respective boards. The presidents and first vice presidents of the Reserve Banks are selected by the boards of directors of those banks, subject to the approval of the Board

---

serve banks . . . . Such representatives shall be presidents or first vice presidents of Federal Reserve banks and, . . . shall be elected annually [by various combinations of the boards of directors of the twelve Federal Reserve banks] . . . . An alternate to serve in the absence of each such representative shall likewise be a president or first vice president of a Federal Reserve bank and shall be elected annually in the same manner.

6. On August 12, 1976, the three-judge court provisions of the United States Code were amended and, *inter alia*, § 2282 was repealed. Pub.L. 94–381, 90 Stat. 1119. However, plaintiff filed this action on June 21, 1976.

7. National banks must be members of the System, 12 U.S.C. § 282; state-chartered banks may belong. 12 U.S.C. § 321.

of Governors. 12 U.S.C. § 341. The Board of Governors is empowered to exercise general supervision over the Federal Reserve Banks and may suspend or remove any director or officer of any Reserve Bank for cause.

The FOMC directs and regulates the purchase and sale of government and other securities by the Reserve Banks in the open market[8] and thereby affects the supply of money.[9] The Committee is composed of the seven members of the Board of Governors and five representatives of the Reserve Banks, elected by various combinations of the boards of directors of those banks. The latter five must be presidents or first vice presidents of the Reserve Banks.[10]

The Federal Reserve System was established:

> to regulate the supply of money by raising or lowering the reserves of its member banks. When these reserves are raised, member banks find themselves with excess reserves and are thus in a position to make loans and investments by which the supply of money will increase further. Conversely, when the Federal Reserve lowers the reserves of its member banks, they will no longer be able to make loans and investments, or may even have to reduce loans or get rid of investments, thereby extinguishing deposit accounts and contracting the supply of money. Heilbroner, *Understanding Macroeconomics* 187 (4th ed. 1972).

**8.** The Reserve Banks may neither engage nor decline to engage in open market operations "except in accordance with the direction of and regulations adopted by the Committee." 12 U.S.C. § 263(b).

**9.** The functions of the Committee are discussed in some detail in *Bryan v. Federal Open Market Committee*, 235 F.Supp. 877 (D.Mont.1964). *See also Raichle v. Federal Reserve Bank*, 34 F.2d 910 (2d Cir. 1929).

**10.** 12 U.S.C. § 263(a). Five alternates to the Reserve Bank representatives are also selected. *See* note 5, *supra*.

**11.** That plaintiff demonstrate injury in fact is the first requirement of the two-part test for determining standing to sue formulated by the Supreme Court in *Association of Data Process-*

The three chief means by which the System formulates and executes general monetary policy are open market operations, the regulation of member bank borrowings from the Reserve Banks through the discount rate, and the fixing of member bank reserve requirements. These actions affect the supply of money and credit in the country and thus influence interest rates. The most flexible and continuously used of these tools is the open market instrument.

## THE QUESTION OF STANDING

If a party litigant fails to demonstrate that he has standing to sue, a federal court must decline to accept jurisdiction and to exercise its remedial powers. Thus, the plaintiff must meet the Article III requirement that there be a case of controversy by demonstrating that the allegedly unconstitutional appointment and service on the FOMC of the Reserve Bank representatives has caused him injury in fact which may likely be remedied by a favorable decision.[11] *See Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976); *United States v. SCRAP*, 412 U.S. 669, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973); *Sierra Club v. Morton*, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972).

■ Standing "focuses on the party seeking to get his complaint before a federal court and not on the issues he wishes to

*ing Service Organizations, Inc. v. Camp*, 397 U.S. 150, 152, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970). The second, nonconstitutional part of the test requires that the interest sought to be protected by a party be "arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." *Id.* at 153, 90 S.Ct. at 830. *See Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 39, n. 19, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976). Because this Court finds that plaintiff has not been injured in fact either as a Congressman or as a bondholder, it need not consider the "zone of interests" test. *See, id.; United States v. SCRAP*, 412 U.S. 669, 686 n. 13, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973); *Sierra Club v. Morton*, 405 U.S. 727, 733 n. 5, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972).

have adjudicated." *Flast v. Cohen*, 392 U.S. 83, 99, 88 S.Ct. 1942, 1952, 20 L.Ed.2d 947 (1968). As the Supreme Court most recently reaffirmed in *Eastern Kentucky Welfare Rights*, 426 U.S. at 38, 96 S.Ct. at 1924:

> [T]he standing question in its Art. III aspect "is whether the plaintiff has 'alleged such a personal stake in the outcome of the controversy' as to warrant *his* invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf." [Citation omitted.] . . . [W]hen a plaintiff's standing is brought into issue the relevant inquiry is whether, assuming justiciability of the claim, the plaintiff has shown an injury to himself that is likely to be redressed by a favorable decision. Absent such a showing, exercise of its power by a federal court would be gratuitous and thus inconsistent with the Art. III limitation.

A party seeking relief from a federal court must allege facts from which it may reasonably be inferred that his injury resulted in a "concretely demonstrable way" from the defendant's actions and that the court may remedy the wrong which the plaintiff suffers. *Warth v. Seldin*, 422 U.S. 490, 504, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). A party may not seek comfort in "the remote possibility, unsubstantiated by allegations of fact, that [his] situation might have been better had.[the defendant] acted otherwise, and might improve were the court to afford relief." *Id.* at 507, 95 S.Ct. at 2209. Succinctly stated, Congressman Reuss must allege a particularized injury specifically resulting from the defendants' conduct. Should he fail in this regard, there is no jurisdiction to hear the claim, and the Court must dismiss the complaint or exceed its assigned role under Article III.

### Standing as a Congressman

■ Several courts have considered the circumstances under which a Congressman has standing to sue, and by far the majority of recent litigation has been decided in this Circuit. Unlike those cases in which there has been a clear demonstration of sufficient injury in fact, Mr. Reuss asserts no specific impairment to the effectiveness of his vote as a member of Congress; neither does he sufficiently establish that the challenged procedures and actions have hindered the exercise of other congressional duties including participation in the confirmation of officers of the United States and consideration of impeachment.

A Congressman has been deemed to have standing to sue when executive action has impaired the efficacy of his vote. In *Kennedy v. Sampson*, 167 U.S.App.D.C. 192, 511 F.2d 430 (1974), a United States Senator who voted in favor of the Family Practice of Medicine Act challenged the legality of a purported pocket veto of that bill by the President. Because the effectiveness of his vote on a particular measure was at stake, the court found that the Senator had demonstrated sufficient injury to confer standing to sue. Similarly, in *Pressler v. Simon*, C.A. 76–782 (D.D.C. Oct. 12, 1976) (three-judge court), a Congressman prevented by the application of certain sections of federal statutes from voting on the ascertainment of congressional salaries, a legislative duty expressly mandated by the Constitution, was held to have standing to sue because his vote had been impaired. *Cf. Coleman v. Miller*, 307 U.S. 433, 59 S.Ct. 972, 83 L.Ed. 1385 (1939).

Standing has also been found when Senators were deprived of their right to participate in the confirmation of federal officers nominated by the President. *Williams v. Phillips*, 360 F.Supp. 1363 (D.D.C.), *motion denied and remanded*, 157 U.S.App.D.C. 80, 482 F.2d 669 (1973). In *Williams*, the President had appointed an Acting Director of the Office of Economic Opportunity thereby circumventing the plaintiff-Senators' responsibility to confirm the Director pursuant to statute and the Appointments Clause.

Although there is a split of authority, the Court of Appeals of this Circuit in *Mitchell v. Laird*, 159 U.S.App.D.C. 344, 488 F.2d 611 (1973), held that Congressmen have stand-

ing to challenge the constitutionality of an allegedly unlawful war because of such a finding's effect on the duties of the Congressmen to consider impeachment of certain executive officers and to perform other legislative functions relating to the conduct of the war. In contrast to *Mitchell*, the Second Circuit ruled, *inter alia*, that a member of Congress who sought a declaration that military activities in Cambodia were unlawful and an injunction against the continuance of such activities lacked standing to sue. *Holtzman v. Schlesinger*, 484 F.2d 1307 (2d Cir. 1973), *cert. denied*, 416 U.S. 936, 94 S.Ct. 1935, 40 L.Ed.2d 286 (1974). Because the plaintiff had fully participated in congressional debates and because her vote had been rendered ineffective only by the contrary votes of her colleagues and not by any actions of the defendants, the court rejected the contention that the declaration was necessary for her properly to consider impeachment of the President. It concluded that an advisory opinion was sought from the court.

Similarly, in *Harrington v. Schlesinger*, 528 F.2d 455 (4th Cir. 1975), various plaintiffs, including four Congressmen, claimed that expenditure of tax monies in support of the recent Vietnam conflict violated federal statutes limiting involvement there and the Appropriations Clause of the Constitution. The Fourth Circuit rejected the Congressmen's claims of standing based upon their interest in fostering enforcement of laws for which they voted and upon the effect a judicial declaration concerning the legality of the Executive's activities would have in pursuing their legislative duties. The court concluded that their interest was no different from any other citizen's and too generalized to grant standing, and particularly the court found at 459 that "[t]he plaintiffs' status as congressmen does not give them standing to sue for a declaration that Executive activities are illegal."

In no case has a member of Congress been held to have standing solely in that capacity to challenge the constitutionality of a federal statute. *See e. g., Harrington v. Schlesinger, supra. Metcalf v. National Petroleum Council*, 407 F.Supp. 257 (D.D.C. 1976), involved a challenge by a Senator who alleged that because the composition of the Council and its subgroups gave improper influence to industry special interests, those advisory bodies were functioning in violation of two federal statutes. The court ruled that because the Senator had helped to pass the statutes at issue, there was no question about the effectiveness of his votes. Moreover, because the Senate had the power to review the activities of the advisory groups as well as the power over appropriations, the Senator had suffered no real injury and thus lacked standing to sue.

In *Public Citizen v. Sampson*, 379 F.Supp. 662 (D.D.C.1974), *aff'd without opinion*, 169 U.S.App.D.C. 301, 515 F.2d 1018 (1975), various Congressmen challenged the constitutionality of certain regulations concerning title and patent rights to inventions which might be developed under government-financed research and development contracts. The court ruled, *inter alia*, that the Congressmen lacked standing to sue finding that by promulgating the regulations the defendant, Administrator of the General Services Administration (GSA), could not interfere with the right and power of the plaintiffs to participate in decisions concerning the disposition of government property and that they could at any time "propose legislation regulating the contractual authority of the [GSA]." 379 F.Supp. at 667. *Cf. Korioth v. Briscoe*, 523 F.2d 1271 (5th Cir. 1975).

Plaintiff has placed great reliance on the recent decision declaring unconstitutional certain portions of the Federal Election Campaign Act of 1971, as amended in 1974. *Buckley v. Valeo*, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976). Indeed the *Buckley* Court found that "any appointee exercising significant authority pursuant to the laws of the United States is an Officer of the United States, and must, therefore, be appointed in the manner prescribed by [the Appointments Clause]." *Id.* at 126, 96 S.Ct. at 685. However, regardless of the merits

of plaintiff's claim that representatives on the FOMC must be appointed in accordance with the Appointments Clause, he still must meet the injury in fact test for this Court to have jurisdiction and thereby exercise its remedial powers.

*Buckley* found that because "at least some of the appellants [had] a sufficient 'personal stake' in a determination of the constitutional validity of each of the challenged provisions [of the Campaign Act]," *id.* at 12, 96 S.Ct. at 631, a case or controversy was presented within the meaning of Article III. While the named plaintiff was a Senator, he appears to have challenged the statute in his capacity as a candidate for re-election. Moreover, the challenged statute itself conferred standing on any individual eligible to vote in a presidential election. *Buckley*, therefore, does not alter the requirement that legislators, including members of Congress, must demonstrate personal injury in fact in order to meet the standing requirement of Article III.

Mindful of the above rulings, the Court now addresses the allegations of injury by Congressman Reuss set forth in his complaint and memorandum opposing defendants' motion to dismiss. He alleges that the individual defendants by voting as members of the Committee while not properly appointed as officers of the United States hinder the exercise of his legislative powers and duties including deciding on impeachment; regulating commerce and the value of money and borrowing on the credit of the United States; and participating in the confirmation of presidential appointees. He further argues that by carrying out the orders of the unconstitutionally constituted Committee, the Reserve Banks interfere with his legislative duties to regulate the value of money and foreign exchange pursuant to Art. I, § 8, cl. 5 of the Constitution.

The Court now turns to an analysis of each of plaintiff's allegations.

First, plaintiff argues that because the Reserve Bank representatives are not properly denominated as officers, they escape the reach of the impeachment power pursuant to Art. I, § 2, cl. 5 and Art. II, § 4 of the Constitution. Consequently, he allegedly suffers significant injury in his capacity as a Congressman.[12] However, there are no specific allegations of wrongdoing against the individual defendants. The claim that the Congressman's impeachment power has been infringed is remote, conjectural and insufficient.

Mr. Reuss further argues that because the Reserve Bank representatives are not properly designated as officers pursuant to the Appointments Clause, any delegation of congressional authority under Art. I, § 8 of the Constitution, including the power to coin money and regulate its value, to borrow money on the credit of the United States, and to regulate commerce, is improper. He appears to be arguing that because Reserve Bank members are not appointed pursuant to the Appointments Clause, the FOMC must be akin to a private agency. He relies upon *Schechter Poultry Corp. v. United States*, 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570 (1935), and contends that since congressional duties may be delegated only to governmental and not to private bodies, the attempted delegation of congressional power to those constitutionally ineligible to receive it is a nullity, and the individual defendants are exercising powers which are vested in the Congress. Hence, plaintiff argues, his power as a Congressman is being usurped, and he suffers injury.

That argument, likewise, is without merit. In *Schechter*, Congress attempted to delegate legislative authority, *inter alia*, to trade and industrial associations which were to draw up "codes of fair competition"

---

12. Defendants respond that because the presidents and first vice presidents of the Reserve Banks must be approved by the Board of Governors and because they are subject to removal for cause, the Reserve Bank representatives are properly appointed to the FOMC pursuant to the Appointments Clause as "inferior officers," and thus are subject to impeachment. The Court does not agree with defendants' assertion that the Reserve Bank members are inferior officers within the meaning of the Appointments Clause. However, because of the disposition of this case, the Court need not decide this issue.

for their respective industries and then apply to the President for his approval. Unlike *Schechter* where the attempted delegation of legislative power was to completely private groups, in the instant action the majority of voting members of the FOMC are clearly officers of the United States. Moreover, while selected by the boards of directors of the Reserve Banks, the presidents and first vice presidents must be approved by the Board of Governors and thus arguably serve in more than a private capacity. Therefore, it cannot be reasonably argued that the delegation of congressional authority to the FOMC is to a private agency and thus improper.

Because the Senate, and not the House of Representatives, confirms presidential appointments made pursuant to the Appointments Clause, there is no merit to the allegation that plaintiff as a Congressman is harmed because of infringement on his powers to affect the confirmation process through negotiation with members of the Senate. Again, he fails to show adequate injury in fact.

Service on the FOMC by the Reserve Bank representatives in no way affects plaintiff's ability to perform his legislative duties. He may at any time introduce legislation to override the policies or actions of the Committee. *Cf. Metcalf v. National Petroleum Council*, 407 F.Supp. at 260; *Public Citizen v. Sampson*, 379 F.Supp. at 667. Accordingly, the plaintiff has neither established a causal connection between the allegedly unconstitutional appointment and service on the Committee by the Reserve Bank representatives and his alleged inability to function as a legislator nor demonstrated how the relief he seeks will enhance his ability to perform his legislative responsibilities. *See Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. at 40–46, 96 S.Ct. at 1925–27; *Warth v. Seldin*, 422 U.S. at 504–08, 95 S.Ct. 2197.

The plaintiff, in his capacity as a Congressman, has not met his burden. He has not alleged or demonstrated any injury in fact.[13]

### Standing as a Bondholder

In the amended complaint, the plaintiff as a bondholder alleges that the individual defendants' actions on the FOMC, including voting to raise or lower interest rates[14] and voting to increase or decrease the availability of money and credit, *can* reduce the value of his bonds and thus deprive him of his property without due process under the Fifth Amendment. The further allegation is made that the Reserve Banks, in carrying out FOMC directions, act in a manner which *may* deprive him of his property.[15] The substance of the argument is that the possession of the power to deprive him of his property by improperly appointed officials establishes personal injury in fact sufficient to confer standing to sue in his bondholder capacity.

At best, the plaintiff's contentions are generalized concerns or grievances shared by many members of the public,[16] and therefore the alleged injury is abstract and speculative. In *Schlesinger v. Reservists Committee to Stop the War*, 418 U.S. 208, 94 S.Ct. 2925, 41 L.Ed.2d 706 (1974), plaintiffs brought a class action on behalf, *inter alia*, of all citizens and taxpayers claiming that the Armed Forces Reserve membership

---

**13.** Because plaintiff has demonstrated no injury in fact as a consequence of the individual defendants' service on the Committee, the Court need not consider his allegations against the Reserve Banks.

**14.** Defendants argue that while the FOMC's activities may have an effect on interest rates, the Committee does not set those rates as the amended complaint asserts.

**15.** Amended complaint, ¶¶ 29, 31.

**16.** In *Warth v. Seldin, supra*, the Supreme Court noted that the question of standing involved both constitutional and prudential limitations on federal court jurisdiction. The Article III requirement that there be injury in fact sufficient to establish a case or controversy is, of course, a constitutional mandate. The fact that the claimed injury is a generalized grievance shared by a large class of citizens constitutes a prudential limitation. 422 U.S. at 498–99, 95 S.Ct. 2197.

of members of Congress violated the constitutional provision prohibiting a person from holding an office under the United States while serving in Congress. They alleged injury as a result of the failure by those so serving faithfully to discharge their duties as members of Congress. The Supreme Court ruled that the parties had no standing to sue as citizens because their claimed injury implicated only the generalized interest in constitutional governance shared by all citizens, an abstract injury and not the concrete injury necessary under Article III. *See also Warth v. Seldin, supra; Public Citizen v. Sampson, supra.*

As an investor, the plaintiff fails to point to any specific injuries sustained by him by reason of the selection procedures and service of the individual defendants. Because of the many factors which influence monetary conditions, including open market operations, his allegation that the value of his securities holdings is affected by the Committee's actions is uncertain and tenuous. Whatever the legal status of the selection procedures, plaintiff must still demonstrate that he has been injured in fact by the selection process and by the service on the Committee of the individual defendants. Otherwise, the Article III requirement that an actual case or controversy must exist before a federal court accepts jurisdiction is not met, and this Court would exceed its proper role in our system of government if it considered plaintiff's claim.

Additionally, plaintiff has failed to allege any causal connection between the allegedly improper selection of the Reserve Bank representatives or their service on the Committee and any possible impact on the value of his securities. Thus, the alleged injury may not even be a consequence of defendants' actions, and it is not clear that the alleged injury would be redressed by a favorable decision. *See Simon v. Eastern Kentucky Welfare Rights Organization,* 426 U.S. at 40–46, 96 S.Ct. at 1925–27; *Warth v. Seldin,* 422 U.S. at 504–08, 95 S.Ct. 2197.

As a bondholder, Congressman Reuss' status in this litigation is similar to that of the plaintiff in *Bryan v. Federal Open Market Committee,* 235 F.Supp. 877 (D.Mont. 1964). There, the plaintiff Bryan claimed standing as the owner of a treasury bill. He claimed, *inter alia,* that its value was affected by the Committee's operations, that the Reserve Bank representatives took no oath of office and that the Committee acted under an unconstitutional delegation of power by Congress. The Montana District Court found that since Bryan had failed to show direct injury or to allege that his treasury bill would not be paid at maturity, his claims were speculative and tenuous. Further, he had alleged no "injury to himself apart from that suffered by all other owners of government obligations." *Id.* at 882. The missing factor in *Bryan* was injury in fact. The court thus concluded that plaintiff lacked standing to sue and granted the defendants' motion to dismiss on that ground. Similarly, Congressman Reuss, as a bondholder, has alleged no injury in fact.[17]

In sum, giving full weight to all material allegations of the complaint, the Court finds that plaintiff lacks standing to maintain this action. Accordingly, it is this 22nd day of December, 1976,

ORDERED that the motion of defendants to dismiss the complaint is granted, and the complaint of the plaintiff be, and hereby is, dismissed.

---

**17.** Plaintiff's claim against the Reserve Banks also fails to demonstrate injury in fact.